UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re:

                                             Case No. 8:09-bk-29815-MGW

Darwin L. Wilson,                    Chapter 7

       Debtor.

_____/

**MEMORANDUM OPINION ON CHAPTER 7 TRUSTEE'S MOTION TO**
**COMPEL TURNOVER AND OBJECTION TO AMENDED SCHEDULE C**

Under the Eleventh Circuit's *Doan* decision,[1] absent bad faith or prejudice to creditors, a

debtor has a right to amend schedules at any time during the case. In this case, the Debtor

amended his schedules to add a claim under Florida's "wildcard exemption," which allows a

debtor who does not claim or receive the benefit of the Florida constitutional homestead

exemption to claim an additional $4000 in personal property as exempt.[2]  However, the Debtor

amended his schedules only after the Court had already sustained an objection to the Debtor's

original claim of exemptions, an order compelling turnover of the resulting non-exempt property

had been entered, and a further motion to compel compliance with the turnover order had been

filed and was pending. The Court finds that under the circumstances of this case, creditors will

be prejudiced by the belated claim of exemptions. Moreover, under the doctrine of res judicata,

the Debtor is precluded at this stage of the case from defeating this Court's turnover order by his

claim of the wildcard exemption.  The Court, therefore, granted  the Trustee's Motion to Compel

Turnover[3] and sustained the Trustee's Objection to the Debtor's Amended Schedule C.[4]

---

[1] *In re Doan,* 672 F.2d 831, 833 (11th Cir. 1982).

[2] *See* Fla. Stat. § 222.25(4) (2009) (providing for an additional $4000 exemption in personal property "if the debtor does not claim or receive the benefits of a homestead exemption under s. 4, Art. X of the State Constitution") (sometimes referred to as the "wildcard exemption").

[3] Doc. No. 28.

[4] Doc. No. 35.

Factual and Procedural Background

The Debtor filed his chapter 7 bankruptcy petition on December 31, 2009.  In his original

Schedule C,[5] the Debtor claimed his home as exempt under Florida's constitutional homestead

exemption.[6] He listed the value of the claimed exemption as zero, and he listed the current value

of the property (without deducting the exemption) as $129,000.  The Debtor also claimed an

exemption in a 2003 GMC Envoy under section 222.25(1) of the Florida Statutes, which

provides a debtor a $1000 automobile exemption.[7]  A number of other claims to exemptions on

the Debtor's original Schedule C cited section 4(a)(2) of the Florida Constitution—i.e., the

$1000 personal property exemption.[8]  Nowhere on the original Schedule C did the Debtor

reference section 222.25(4) of the Florida Statutes, which provides for the $4000 wildcard

exemption.[9]  Consistent with claiming the home as exempt homestead on Schedule C, the

Debtor's Statement of Intention[10] dated December 31, 2009, stated that he would retain the

property (as opposed to surrendering it), reaffirm the mortgage debt, and claim the property as

exempt.

On February 4, 2010, the Chapter 7 Trustee, Susan K. Woodard, filed her Objection to

Debtor(s) Exemptions ("Objection to Exemptions") stating that the claimed exemption amount

"exceed[ed] the allowed personal property exemption and vehicle exemption under Florida

[l]aw." [11]  This filing was a routine objection to the total value of the property claimed as exempt

---

[5] Doc. No. 1, at 12-13, *Schedule C – Property Claimed as Exempt*.

[6] Fla. Const. art. X, § 4(a)(1).

[7] *See* Fla. Stat. § 222.25(1) (exempting "[a] debtor's interest, not to exceed $1,000 in value, in a single motor vehicle).

[8] *See* Fla. Const. art. X, § 4(a)(2) (exempting "personal property to the value of one thousand dollars").

[9] *See* note 2 *supra*.

[10] Doc. No. 1, at 36, *Chapter 7 Individual Debtor's Statement of Intention*.

[11] Doc. No. 10.

compared to the $2000 value of the exemptions identified on Schedule C.[12]  It did not challenge

exactly which exemptions the Debtor was entitled to claim -- it only raised the issue of whether

the value of the personal property exceeded the statutory exemption amount. In response, and as

is this Court's normal practice, the Court entered an Order Sustaining Trustee's Objection to

Property Claimed as Exempt ("Order Sustaining Objection").[13] This was a routine, form order

meant to preserve the estate's rights to contest the Debtor's retention of property at the stated

value compared to the total $2000 statutory value of the two exemptions claimed.  It likewise did

not address any issues concerning the Debtor's entitlement to any specific exemption or the

Debtor's claimed valuation amounts.[14]  The Debtor did not respond to either the Objection to

Exemptions or the Order Sustaining Objection.

As is the practice in this court, the proper follow-up procedure for the Trustee if she

wanted to contest either the specific valuation amounts or the Debtor's entitlement to a particular

exemption was to file a motion for turnover.  On June 14, 2010, the Trustee did in fact file a

Motion for Turnover or for Payment for Non-Exempt Personal Property[15] ("Initial Motion for

Turnover") based on an appraisal that she commissioned.  The Court's reading of the Initial

Motion for Turnover combined with the Objection to Exemptions is that the Trustee did not

consider the Debtor eligible for the $4000 wildcard exemption.  She thus moved that the Debtor

---

[12] The Debtor's original schedule C claimed that the total value of claimed exempt property was $35,651.53. Because this included a 401(k) retirement plan, which was exempt under section 222.21(2) and valued at $29,651.53, the net value of the Debtor's non-401(k) property claimed as exempt in the original Schedule C was $6000.  The natural reading, therefore, of the Objection to Exemptions was that the $6000 claimed in exempt property exceeded the combined $2000 allowable under the $1000 personal property exemption and the $1000 automobile exemption.

[13] Doc. No. 12.

[14] *Id.* ¶ 1-5 (making clear that (1) the Court was sustaining the Trustee's objection "to the extent the value of the Claimed Property exceeds the allowable objections under Florida law," (2) the Court would resolve any dispute as to the value of the Claimed Property only after the Trustee filed a motion for turnover, and (3) "[i]f either party request[ed] reconsideration of the terms of the Order, the Court [would] promptly schedule a hearing to consider the motion *de novo*).

[15] Doc. No. 21.

be ordered to either turn over the personal property or, alternatively, to pay the Trustee

$9,559.41—i.e., the amount by which the appraised value of the Debtor's claimed exempt

property exceeded the $2000 in exemptions claims.  The Trustee filed her Initial Motion for

Turnover using the negative notice procedure allowed under the local rules.[16] The Debtor did not

respond.  Finding the Initial Motion for Turnover uncontested, the Court granted it in an Order

dated August 16, 2010 ("Turnover Order"),[17] and ordered the Debtor to pay the $9,559.41

directly to the Trustee within fifteen days—i.e., by August 31, 2010.  The Debtor did not pay the

Trustee as this Court ordered.

As a result, on October 5, 2010, the Trustee filed her Motion to Compel Turnover

("Motion to Compel"),[18] seeking enforcement of the Turnover Order.  In the Motion to Compel,

the Trustee asks the Court to order the Debtor to physically surrender the personal property of

the estate that exceeds the combined $2000 value exempted under the personal property and

automobile exemptions claimed.  Responding to this issue for the first time on October 21, 2010,

the Debtor filed a timely Objection to Trustee's Motion to Compel Turnover of Property

("Objection to Turnover").[19]   In the Objection to Turnover, the Debtor stated that he

> …is not receiving the benefit of the homestead exemption as there
> is no equity and is therefore entitled to aggregate statutory amounts
> of $5000 for personal property and $1000 for one motor vehicle.[20]

On December 7, 2010, just two days before a scheduled hearing on the Motion to

Compel, the Debtor filed an Amended Schedule C – Property Claimed as Exempt[21] ("Amended

Schedule C"), which identified section 225.25(4) of the Florida Statutes as the legal authority

---

[16] Bankr. M.D. Fla. R. 2002-4.

[17] Doc. No. 24.

[18] Doc. No. 28.

[19] Doc. No. 29.

[20] *Id.* ¶ 2.

[21] Doc. No. 34.

that supports the Debtor's claimed personal property exemption.  Because the Trustee had not

yet had time to review the Amended Schedule C, the Court continued the December 9, 2010

hearing to January 6, 2011.  In the interim, the Trustee filed an Objection to Debtor's Amended

Schedule C[22] ("Objection to Amendment"), in which the Trustee claimed that the Debtor is

barred from amending his Schedule C under the doctrines of res judicata, collateral estoppel,

laches, and lack of good faith.[23]  The Trustee also argued that the Debtor's delay in amending his

schedule of claimed exemptions caused her to unnecessarily "expend[ ] considerable effort and

incur[ ] additional expense in the administration of this estate."  At the hearing on January 6,

2011, the Debtor argued that his original Schedule C had effectively, if not explicitly, claimed

the $4000 wildcard exemption because he valued the homestead exemption at zero and the total

personal property claimed as exempt equaled $6000.[24]

The Court now has before it both the Trustee's Motion to Compel and the Trustee's

Objection to Amendment.   The facts and procedural history described above present the Court

with two issues:  (1) was there ever an original claim of the wildcard exemption under section

222.25(4), and (2) if there was no such claim, can the Debtor now make such a claim of

exemption, or is he precluded from doing so either as a matter of bad faith, prejudice, or under

the principles of res judicata?

Conclusions of Law

The Court has jurisdiction to determine the Motion to Compel and the Objection to

Amendment pursuant to 28 U.S.C. § 1334(b) and 11 U.S.C. §§ 521, 522 and 542. This is a core

proceeding pursuant to 28 U.S.C. § 157(b)(2)(B) and (E).

---

[22] Doc. No. 35.

[23] *Id.* at ¶ 9.B.

[24] *See* note 12 *supra.*

A.       A Debtor's Claim of Exempt Personal Property Under Florida Law

Florida law permits debtors to exempt up to $6000 in personal property:  a $1000

exemption for personal property,[25] a $1000 exemption for the debtor's interest in a single motor

vehicle,[26] and the $4000 wildcard exemption for additional personal property "if the debtor does

not claim or receive the benefits of a homestead exemption under s. 4, Art. X of the State

Constitution."[27]

Under Bankruptcy Code section 522(l), a debtor must "file a list of property that the

debtor claims as exempt."  On Schedule C, the debtor must specify for each property claimed: (i)

a description of the property, (ii) the specific law that allows the exemption, (iii) the exemption's

claimed value, and (iv) the current value of the property without deducting the exemption. In

addition, section 521(a) requires a chapter 7 debtor to file a statement of intention that declares

for debts that are secured by property of the estate whether the debtor will retain or surrender the

property and whether the property is claimed as exempt.[28]

As noted above, the first question before the Court is whether there was ever an original

claim of the wildcard exemption under section 222.25(4).  The Court finds that the Debtor's

original Schedule C does not claim the wildcard exemption.  Instead, it explicitly claims

Florida's constitutional exemptions under Article X for both personal property[29] and the

homestead exemption.[30] The plain language of section 222.25(4) precludes a debtor from

simultaneously claiming both the wildcard exemption and the constitutional homestead

---

[25] Fla. Const. art. X, § 4(a)(2).

[26] Fla. Stat. § 222.25(1).

[27] Fla. Stat. § 222.25(4).

[28] 11 U.S.C. § 521(a)(2)(A).

[29] Fla. Const. art. X, § 4(a)(2).

[30] Fla. Const. art. X, § 4(a)(1).

exemption.[31]  The Debtor, therefore, effectively precluded his claim of the wildcard exemption

when he declared real property as exempt homestead property on his original Schedule C.

In reaching this conclusion, the Court has considered the Debtor's argument that he

implicitly claimed the wildcard exemption and not the homestead exemption when he valued the

homestead exemption at zero and claimed a total of $6000 in exempt personal property on

Schedule C.  This is a troublesome argument.  If the Debtor wanted to claim the wildcard, he

should not have listed the homestead on Schedule C at all, and he should not have identified it as

exempt under section 4(a)(1) of Article X.  The more natural reading of the Debtor's original

Schedule C is that because the Debtor had no equity in the homestead property, the benefit of it

to him was then currently valued at zero.  The Debtor's Statement of Intention, which declares

that he will retain the property and claim it as exempt, supports this reading.

Moreover, it is not uncommon for the values of property claimed on a debtor's Schedule

C to add up to an amount in excess of the $1000 allowed generally for personal property or the

$2000 allowed if an interest in an automobile is also claimed.  The Court concludes that an

implicit claim of an unidentified $4000 exemption, one that can only be divined by finding and

applying the correct mathematical calculation, cannot suffice to establish a claim of the wildcard

exemption under section 222.25(4).  The wildcard exemption must be explicitly claimed and

cannot be contradicted by other claimed exemptions. Accordingly, the Court finds that the

wildcard exemption was not claimed in the Debtor's original Schedule C.

B.      Amendments to a Debtor's Schedules and Claims of Exemption

During the course of an individual bankruptcy case, it is not uncommon for a debtor to

change his or her intention and decide to surrender homestead property for various financial and

practical reasons.  This is particularly true in Florida, in part because when the wildcard

---

[31] *See* note 2 *supra.*

exemption applies,[32] it enables a debtor to retain an extra $4000 of personal property. In effect,

it triples the combined $2000 exemption for a debtor with an automobile. Not surprisingly, a

significant amount of caselaw has developed challenging a debtor's right to amend Schedule C

and the Statement of Intention post petition. In 2008, for example, two Florida bankruptcy

courts rejected a debtor's attempt to amend the original schedules as untimely filed.[33] That same

year, two other courts (including this one) allowed post-petition amendments under certain

circumstances.[34] Specifically, in the 2008 case of *In re Bennett*, this Court determined that the

Eleventh Circuit's ruling in the 1982 case of *In re Doan* controls a debtor's right to amend:

> [T]he Eleventh Circuit has made clear that bankruptcy courts have
> no discretion to deny a debtor's right to amend schedules and
> statements at *any* time during a case.[35] . . . The *Doan* Court
> included one limitation on the right to amend- that an amendment
> might be denied if there is a showing of bad faith or prejudice to
> creditors.[36]

That said, an unlimited number of amendments certainly cannot be allowed right up until

a chapter 7 bankruptcy case is closed. An endless cycle of amendments and litigation thereon

would certainly frustrate the bankruptcy system's goal to swiftly and efficiently resolve disputed

claims. In this respect, the Eleventh Circuit's precedent in *Doan*, gives the Court discretion to

---

[32] Whether the Debtor in this case is eligible for the § 222.25(4) wildcard exemption need not be determined based on the Court's determination *infra* that his late-filed attempt to claim the wildcard is barred by the doctrine of res judicata.

[33] *See In re Morales*, 381 B.R. 917, 921-23 (Bankr. S.D. Fla. 2008) (finding that a debtor's untimely amendment to his statement of intentions that he would surrender the homestead property precluded him from claiming the increased personal property exemption); *In re Guididas*, 393 B.R. 251, 256 (Bankr. M.D. Fla. 2008) (finding the debtor's post-discharge amendments to be untimely because the petition date is the controlling date to determine whether a debtor is entitled to the wildcard exemption under § 222.25(4)).

[34] *In re Martias*, 2008 WL 906776 *2 (Bankr. S.D. Fla. 2008) (finding that debtor should be permitted to amend her Schedule C because the amendment related back to the petition date); *In re Bennett*, 395 B.R. 781, 791 (Bankr. M.D. Fla. 2008) (described *infra*).

[35] *Bennett*, 395 B.R. at 791 (emphasis in original) (citing *In re Doan,* 672 F.2d 831, 833 (11th Cir. 1982) and signaling Fed. R. Bankr. P. 1009(a)).

[36] *Id.* (citing *Doan*, 672 F.2d at 833)).

"deny leave to amend on a showing of a debtor's bad faith or of prejudice to creditors."[37]  In this

case, the Trustee argues that the Debtor's belated responses sound in bad faith and laches, and

that the delayed amendment has unnecessarily created additional expenses in prosecuting the

Initial Motion for Turnover and Motion to Compel. These additional administrative expenses

will prejudice creditors in that it will reduce any ultimate distribution to them. The Court finds

that while this prejudice is not great, it does constitute some prejudice because the Trustee

continued forward in prosecuting the turnover of the Debtor's non-exempt property based on the

assumption that the wildcard exemption had never been claimed, either at the beginning of the

case or in connection with the Trustee's Initial Motion for Turnover.

Further, once a dispute concerning a debtor's claim of exemption has been resolved and

reduced to a final and non-appealable order, the principle of res judicata would bar its

relitigation:

> [Res judicata or] claim preclusion prevents a party from suing on a
> claim which has been previously litigated to a final judgment by
> that party or such party's privies and precludes the assertion by
> such parties of any legal theory, cause of action, or defense which
> could have been asserted in that action.[38]

This doctrine supports the long-standing policy goal of finality in judicial proceedings.[39]  As the

Eleventh Circuit described in 1984, "[b]y declaring an end to litigation, the doctrine adds

certainty and stability to social institutions. This certainty in turn generates public respect for the

courts."[40]  Moreover, "[b]y preventing relitigation of issues, res judicata conserves judicial time

and resources."[41]  The standard in this circuit is that res judicata will bar a subsequent action if

---

[37] *Doan*, 672 F.2d at 833.

[38] 18 James Wm. Moore et al., *Moore's Federal Practice* § 131.10[1] at 131-15 (3d ed. 2010).

[39] *S. Pac. R.R. Co. v. U.S.*, 168 U.S. 1, 49 (1897).

[40] *Precision Air Parts, Inc. v. Avco Corp.*, 736 F.2d 1499, 1503 n. 4 (11th Cir. 1984).

[41]*Id.*

(1) the prior decision was rendered by a court of competent jurisdiction; (2) there was a final judgment on the merits; (3) the parties were identical in both suits; and (4) the prior and present causes of action are the same. [42]

Res judicata also bars "those matters which *could have been* raised . . . [and] any defenses which *could have been asserted* in the prior litigation."[43]

Accordingly, the Court also finds that the Debtor's late-filed attempt to amend his claims of exempt property is now precluded under the common law doctrine of res judicata or claim preclusion. As discussed above, this doctrine mandates that claims that could or should have been asserted in an action but were not previously asserted cannot later be raised in another action. The Court specifically finds that the Trustee's June 14, 2010 Initial Motion for Turnover initiated the litigation over the Debtor's claim of exemptions.[44] To assert any additional claim of exemptions or defenses to the Trustee's allegations, the Debtor was obligated to timely respond to the Initial Motion for Turnover. The Debtor ignored this opportunity, and on August 16, 2010, the Court issued the Turnover Order, which was a final and appealable order because it resulted in turnover of estate property that the Trustee could sell for the benefit of creditors. The Debtor did not appeal the Turnover Order within fourteen days as is provided for under Federal Rule of Bankruptcy Procedure 8002, nor did he file a motion for reconsideration within fourteen days after the Order's entry as is provided for in Federal Rule of Bankruptcy Procedure 9023. The Turnover Order thus became final and non-appealable after August 30, 2010. Any belated subsequent claim of exemptions is, therefore, barred by res judicata.

---

[42] *Israel Discount Bank Ltd. v. Entin*, 951 F.2d 311, 314 (11th Cir. 1992).

[43] 18 *Moore's* § 131.11[1] at 131-19 (emphasis added).

[44] The Motion to Compel, which the Trustee filed on October 5, 2010, did not initiate the dispute over the Debtor's claim of exemptions. As noted *supra*, the Motion to Compel is more properly characterized as a motion to enforce this Court's prior Turnover Order.

Conclusion

For the above reasons, this Court concludes that the Debtor's claim of the wildcard exemption is prejudicial to creditors and is barred by res judicata.  Accordingly, the Court previously entered an Order Granting Trustee's Motion to Compel[45] and an Order Sustaining Trustee's Objection to Debtor's Amended Claim of Exemptions.[46]

**DATED** in Chambers at Tampa, Florida, on _____February 24, 2011_____.

_____

Michael G. Williamson
United States Bankruptcy Judge

Copies to:
Counsel for Debtor:  Melanie Archer Newby
Counsel for Trustee:  David B. McEwen
Trustee:  Susan K. Woodard
Debtor:  Darwin L. Wilson

---

[45] Doc. No. 38.
[46] Doc. No. 39.

11